DECIDED FEBRUARY 17, 1932.

*McDonald & McDonald,* for plaintiff in error.
*T. Hoyt Davis, solicitor-general,* contra.

### 22087. McENTYRE *v.* THE STATE.

DECIDED FEBRUARY 17, 1932.

*M. B. Eubanks,* for plaintiff in error.
*M. Neil Andrews, solicitor-general, Horace D. Shattuck,* contra.

LUKE, J. Walter McEntyre, alias Coot McEntyre, was convicted of burglary under an indictment charging him with breaking and

entering the storehouse of E. G. Walden and taking therefrom "three Monogram hams of the value of $9, the same . . being the property of the said E. G. Walden." The verdict was "guilty," and the exception is to the judgment overruling a motion for a new trial based solely upon the usual general grounds.

The corpus delicti and the venue were proved beyond question. E. G. Walden testified, that three hams were taken from his store during the night of August 6, 1931; that at about two o'clock on the following day he saw the defendant "with a round package . . about the size of a ham, wrapped in newspaper;" that he notified officers Bill Warren and Sid White, and that they caught the defendant at Charley Grace's stand "with the same package;" that witness recovered a whole ham and two half hams, but that the word "Monogram" was not on them, as that word was on the "outside" and the covering had been removed; that there was a dim inspection stamp on the hams; that there was no private mark from which witness could say that the hams came from his store, but that he was satisfied that they did come from his place; that the weight was the same, and "to the best of my knowledge that was my ham;" that "we only found one whole ham and a part of two others; and that "the whole ham . . corresponded in weight to the billing on it when I bought it."

Charley Grace testified that defendant "pawned" him the boiled end of a boneless rolled ham which weighed about five pounds; and that the defendant was very drunk. Officer Warren swore that Mr. Walden had reported that he had lost some "boneless hams," and that he caught the defendant sitting on the edge of the counter in Grace's Market with half of two hams rolled up in a newspaper right behind him; that a little later Grace called witness and handed him a ham, which was "identified by Walden;" and that all the ham was delivered to Walden.

The defendant stated to the jury, in substance, that he was with his friend Dwight Camp during the entire night on which the burglary was committed, and that he never entered Walden's store, and never took anything from it; that he was drinking pretty heavily, and that, wishing to empty the whisky he had in a large bottle into a smaller bottle, so that it would not make such a large package, he went to a trash pile (near Walden's store), where there were all sorts of bottles, to get a smaller bottle; that while looking

for the bottle he found a burlap sack with *one ham* in it; that he cut the ham in two, and, being afraid there was something wrong with it, tried to sell it to several persons, but failed to do so; and that he pawned to Mr. Grace a piece of this meat for fifty cents, and went and got pretty drunk. The defendant further stated: "Later I came back there, and Charlie carried me home; and this other ham was there on the table. . . If I had known these two hams had been stolen property, I would not have come out with them, because the police have a habit of shaking me down whenever they see me. . . I didn't know the hams were hot."

Dwight Camp testified that he and the defendant were together during the entire night on which the hams were alleged to have been stolen, and that the defendant did not take them; that the defendant went to hide a quart of liquor they had in a trash pile, and found a sack with *two hams or a ham and a half* in it; and that witness had been convicted "for whisky," and for "passing a bad check."

There was testimony that the defendant had "been charged with nineteen offenses," and that he had been caught in the act of burglary in 1922. There was also testimony that Monogram hams were a popular brand of hams sold extensively in Rome, Georgia.

One of the best discussions of cases where stolen goods have no "earmarks" is by Lamar, J., in *Jordan* v. *State,* 119 *Ga.* 443 (46 S. E. 679). The third head-note of that decision is as follows: "The goods lost had no earmarks, but the coincidence of their correspondence in quantity, variety, and brand with those found in defendant's recent possession, with other evidence, was sufficient identification." See also *McCoy* v. *State,* 18 *Ga. App.* 698 (90 S. E. 355); *Cooper* v. *State,* 43 *Ga. App.* 345 (158 S. E. 617).

Whether or not the meat found in the recent possession of the defendant came from the store which had been burglarized was, in our opinion, a jury question; and, though the evidence in this regard is not as strong as it might have been, yet we do not feel authorized to disturb the verdict.

*Judgment affirmed. Broyles, C. J., concurs. Bloodworth, J., absent on account of sickness.*